IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KELLIE LIPPNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 07 C 448 |
| ) | |
| ) | |
| DEUTSCHE BANK NATIONAL ) | |
| TRUST COMPANY, et al., ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Kellie Lippner's ("Lippner") motion for summary judgment on damages. For the reasons stated below, we grant in part and deny in part the motion.

### BACKGROUND

Lippner alleges that on June 25, 2004, she obtained a $161,000 mortgage loan ("Loan") from Residential Mortgage Assistance Enterprise, LLC ("Residential Mortgage"), a mortgage assistance company, in order to refinance her prior existing loan obligations. The Loan was allegedly secured by Lippner's home in New Lenox,

1

Illinois. Lippner further states that at some point during the life of the Loan, Defendant Litton Loan Servicing, L.P. ("Litton") obtained a legal interest in the Loan and asserted a right to collect payment under the terms of the adjustable rate note ("Note") that Lippner signed in connection with her Loan. Lippner also alleges that Defendant Deutsche Bank National Trust Co. ("Deutsche") subsequently retained an interest in the Loan.

According to Lippner, at the closing of the Loan she was provided with a Truth in Lending Disclosure Statement ("Disclosure Statement") and a Notice of Right to Cancel ("NORTC"). Lippner claims that the Disclosure Statement she received was incomplete in violation of Federal Reserve Board Regulation Z, 12 C.F.R. § 226 ("Regulation Z"), since it did not include a complete payment schedule. Lippner also alleges that she did not receive enough copies of the NORTC and that the copy she did receive was incomplete, also in violation of Regulation Z. Lippner alleges that the violations with respect to the Disclosure Statement and the NORTC extended the period of time in which she had a legal right to cancel the Note and rescind the Loan.

Lippner alleges that she exercised her right to cancel the Note within the extended time period. Defendants allegedly refused to acknowledge Lippner's loan cancellation, return the funds received, and void the security interest held in Lippner's property. Lippner brought the instant action to rescind the Loan and recover damages for alleged violations of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq*. ("TILA"). Residential Mortgage, which was originally a defendant in

2

the instant action, was voluntarily dismissed by Lippner after it filed for Chapter 11 Bankruptcy.

On February 26, 2008, in a memorandum opinion, we granted Litton's motion for summary judgment with respect to all claims, denied Deutsche's motion for summary judgment on liability with respect to all claims, and we granted summary judgment in favor of Lippner on liability with respect to Lippner's claims against Deutsche. Since John Doe was named in the initial complaint, but was never identified or properly served by Lippner, we now dismiss John Doe from the action. At the time of our ruling on the motions for summary judgment, the parties had not fully briefed the issues of remedies and calculation of damages and the court did not rule on those issues. On March 12, 2008, Lippner filed the instant supplement to the motion for summary judgment, specifically addressing remedies and calculation of damages ("Lippner Damages Supplement"). Deutsche has filed a brief opposing Lippner's calculation of damages ("Deutsche Damages Supplement") and both parties have filed additional supplemental briefs specifically pertaining to the issue of the balance on the Loan.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.

Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

The parties agree that Lippner has an outstanding balance that she owes on the subject Loan and that, pursuant to this court's ruling, Lippner is entitled to rescission of that Loan. In the Lippner Damages Supplement, she argues: (1) that the total tender amount after taking into consideration the principal loan amount, closing costs, and loan payments should be calculated at $109,477.31, (2) that Lippner is entitled to $4,482.50 of actual damages incurred in the form of attorney's fees for a state foreclosure action relating to the Loan ("State Case"), (3) that Lippner is entitled to $4,000 in statutory damages, (4) that the total remaining balance owed by Lippner to Deutsche after taking into consideration actual and statutory damages should be $100,994.81, and (5) that all adverse credit information relating to the Loan be deleted. In the Deutsche Damages Supplement, Deutsche argues: (1) that the total tender amount after taking into consideration the principal loan amount, closing costs, the loan payments, and real estate taxes and insurance that were paid by Deutsche on Lippner's behalf should be calculated at $138,329.57, (2) that Lippner is not entitled to actual damages incurred in the form of attorney's fees from the State Case, (3) that Lippner is entitled to only $2,000 in statutory damages, (4) that the total remaining balance owed by Lippner to Deutsche after taking into consideration actual and statutory damages should be $136,329.57, and (5) that Deutsche should have no obligation to remove adverse credit information.

I. Total Tender Amount Owed by Lippner After Rescission

The parties reach differing figures on the total tender amount that Lippner will owe after rescission has occurred. Deutsche and Lippner agree that the total principal balance of the Loan was $161,000. Deutsche and Lippner further agree that, pursuant to TILA, the closing costs of $1,289.57 should be subtracted from the principal loan amount. However, the parties dispute the total amount that Lippner has paid on the Loan to date. Lippner alleged in the Lippner Damages Supplement that she has paid $50,233.12 of the Loan and that this amount should be deducted from the total tender amount. Deutsche argues in the Deutsche Damages Supplement that Lippner was incorrect regarding the amount she has paid on the Loan and that Lippner's figure did not take into account payments that were reversed due to non-payment for insufficient funds. Deutsche argues that the actual amount that Lippner has paid towards the loan is $41,636.56. Deutsche further argues that payments were made on Lippner's behalf for real estate taxes and insurance in the amount of $20,255.70 and this amount should be added to the total tender amount Lippner would owe after rescission.

### A. Payments Made By Lippner

Deutsche and Lippner agree that Lippner made payments on the Loan over a period of time prior to her demand for rescission. Deutsche and Lippner however disagree over the amount of payments that were made by Lippner on the Loan. The

court ordered the parties to submit supplemental briefing on the issue, and in the supplemental briefing submitted by Lippner, she states that she can prove that she paid at least $47,191.25 towards the Loan. Deutsche, however, continues to allege that Lippner has paid only $41,636.56 towards the Loan. It is not disputed that Lippner made payments on the Loan over a period of years, both to Residential Mortgage and to Litton. The payments that were made to Litton were submitted in a variety of forms including by phone, check, and a "speedpay" program that charged a fee to make the payment.

      1. Undisputed Payments

Several payments made by Lippner to Residential Mortgage and Litton are undisputed by the parties. As an initial matter, there is no dispute between the parties that Lippner made payments on the Loan to Residential Mortgage in the total amount of $3,875.91. Deutsche and Lippner also agree: (1) that Lippner paid $1,291.97 on or about November 4, 2004, (2) that Lippner paid $1,300.00 on or about December 13, 2004, (3) that Lippner paid $2,500.00 on or about October 28, 2005, (4) that Lippner paid $3,495.00 on or about May 31, 2006, (5) that Lippner paid $2,500.00 on or about June 30, 2006, (6) that Lippner paid $2,560.00 on or about August 5, 2006, (7) that Lippner paid $2,560.00 on or about September 1, 2006, (8) that Lippner paid $2,560.00 on or about October 2, 2006, and (9) that Lippner paid $2,560.00 on or about November 1, 2006. Thus, the parties do not dispute

$25,202.88 of payments that were made by Lippner towards the Loan.

2. Fees for Speedpay

The parties also do not dispute ten payments that were made by Lippner towards the Loan using an automated payment system known as "speedpay." (D. Damages Supp. Add'l Subm. 1). However, Deutsche correctly notes that each of the payments made on the speedpay system included a fee of $9.99 for using the system and such fee amounts cannot be credited towards the Loan payments. The documents submitted by Lippner, which included receipts from the speedpay system, do indicate that each payment was subject to a fee of $9.99 and, therefore, should not have been credited towards the Loan payments. Thus, after deducting the $9.99 fee from each of the payments, it is clear from the record that Lippner made "speedpay" payments towards the Loan: (1) in the amount of $1,291.97 on or about January 14, 2005, (2) in the amount of $1,291.97 on or about January 24, 2007, (3) in the amount of $2,000.00 on or about March 14, 2005, (4) in the amount of $2,000.00 on or about May 5, 2005, (5) in the amount of $1,300.00 on or about June 29, 2005, (6) in the amount of $1,300.00 on or about July 22, 2005, (7) in the amount of $1,700.00 on or about August 24, 2005, (8) in the amount of $1,958.30 on or about November 28, 2005, (9) in the amount of $1,740.00 on or about December 30, 2005, and (10) in the amount of $2,000.00 on or about February 8, 2006. Thus, the undisputed record is clear that Lippner paid a total of $16,582.24 towards the Loan in ten speedpay

payments on the above dates.

### 3. Other Payments

In Lippner's first brief relating to damages she included payments made on October 4, 2004, and October 31, 2005. Deutsche responded in its brief that the October 4, 2004, payment was returned for insufficient funds and that there is no record that the October 31, 2004 payment, was ever made. In Lippner's supplemental briefing, she offered no evidence that these payments were made and thus concedes that these payments should not be credited towards her Loan.

Lippner has also provided evidence that she made a payment of $1,800.00 towards the Loan on March 8, 2006. In support of the March 8, 2006 payment, Lippner has included bank records as well as a receipt from the speedpay system dated March 8, 2006. In Deutsche's additional supplemental briefing concerning the damages motion, Deutsche states that the March 8, 2006 payment, was returned due to the fact that the Loan was in foreclosure and the amount of $1,800.00 paid by Lippner on that date was not sufficient to reinstate the Loan. In support of Deutsche's assertions concerning the March 8, 2006 payment, Deutsche offers only the loan history documentation kept by Litton, which reflects that no payment was received by Litton on or about March 8, 2006. Deutsche, however, has pointed to no other evidence that would contradict the clear evidence submitted by Lippner that the payment was in fact made on March 8, 2006. Lippner has further provided bank

records that indicate that the $1,800.00 was debited from her account and not re-credited in the weeks following the March 8, 2006 payment. Deutsche has pointed to no evidence to support its assertion that this payment was somehow returned to Lippner without any reflection of it in the loan history documentation. Thus, based on the undisputed evidence in the record, it is clear that Lippner made a payment of $1,800.00 towards the Loan on or about March 8, 2006.

Lippner also asserts that prior to her rescission attempt, she made a final payment towards the Loan on or about December 4, 2006, in the amount of $1,747.56. Deutsche claims that nothing in the record supports the fact that this payment was made and points to Litton's loan history documents, which reflect that no such payment was made. In support of her contention that the December 4, 2006, payment was made, Lippner includes only a copy of a cashier's check signed and dated December 4, 2006. We note that unlike many of Lippner's other Loan payments which are supported by bank records indicating that the payment amounts were actually withdrawn from her account, Lippner has only supported the December 4, 2006 payment, with a copy of the check. Such evidence does not support the proposition that such an amount was actually paid, but merely that a check was drafted in that amount. Thus, based on the evidence in the record no reasonable trier of fact could conclude that Lippner successfully made a payment towards the Loan on December 4, 2006. Thus, based on the entirety of the undisputed evidence in the record, it is clear that Lippner made payments towards the

Loan prior to rescission totaling $43,585.12. This amount includes (1) undisputed payments in the amount of $25,202.88, (2) ten speedpay payments totalling $16,582.24, and (3) one payment by check on March 8, 2006, in the amount of $1,800.00.

### B. Payments on Behalf of Lippner

In the Deutsche Damages Supplement, Deutsche alleges that $20,255.70 in payments for mortgage insurance and real estate taxes were made on behalf of Lippner. Deutsche argues that this amount should be credited to Deutsche and factored into the amount owed by Lippner after rescission. Specifically, Deutsche has offered evidence that Litton paid $5,707.79 for lender insurance and $14,548.21 to redeem real estate taxes so that the subject property would not be lost to tax deed. Lippner has not addressed these payments in either of her damages briefs nor has she contested that these payments were in fact made. Nor has Lippner pointed to any case law or statute that would prevent Deutsche from being credited for these payments after rescission. Each of these payments made on behalf of Lippner were disbursed prior to the failure by Deutsche to honor Lippner's rescission demand, which was the substantive TILA violation in this case. Thus, based on the record, we find that Deutsche is entitled to be credited for payments totalling $20,255.70, and they should be factored into the rescission amount.

### C. Total Amount Owed on the Loan

After factoring the principle loan amount of $161,000.00, closing costs in the amount of $1,289.57, payments already made on the Loan by Lippner totaling $43,585.12, and payments made on behalf of Lippner in the amount of $20,255.70, the undisputed record reflects that the total amount owed by Lippner prior to statutory damages and actual damages should be $136,381.01.

## II. Actual Damages

The parties disagree as to whether Lippner should be entitled to recover actual damages allegedly resulting from Deutsche's TILA violation. Pursuant to 15 U.S.C. § 1640 ("Section 1640"), "any creditor who fails to comply with any requirement imposed under this part, . . . is liable to such person in an amount equal to the sum of . . . any actual damage sustained by such person as a result of the failure. . . ." 15 U.S.C. § 1640. Lippner argues that, as a direct result of Deutsche's failure to comply with Regulation Z, Lippner was forced to defend against a foreclosure action brought by Deutsche in state court and Lippner incurred $4,482.50 in attorney's fees in that action. Lippner argues that these attorney's fees are recoverable as actual damages pursuant to Section 1640. Deutsche argues that attorney's fees from a separate legal action should not be recovered as actual damages under TILA. Deutsche also contests the reasonableness of the attorney's fees billed to Lippner in the State Case.

### A. Recoverability of State Case Attorney's Fees

Defendants argue, as an initial matter, that legal expenses incurred in the State Case cannot be recovered as actual damages under TILA. There is no language in TILA excluding legal fees in related legal actions from actual damages for TILA violations. Deutsche has also failed to cite any authority or precedent to establish that attorney's fees from a related action are not recoverable as actual damages under TILA. Section 1640 provides victims of TILA violations with "any actual damage sustained by such person as a result of the failure [to comply with TILA]. . . ." 15 U.S.C. § 1640(a)(1). When seeking actual damages, a plaintiff must show proximate cause. *Anderson v. Rizza Chevrolet, Inc.*, 9 F. Supp. 2d 908, 913 (N.D. Ill. 1998). For certain TILA violations, such as those relating to disclosures, proximate cause can only be established if the plaintiff can prove that, but for a misrepresentation by the lender, the plaintiff would have secured better terms of credit. *Id.* Deutsche argues that Lippner has not shown that the omissions with respect to the disclosure statement were the proximate cause of the damages she seeks, due to the fact that Lippner has not shown that she read and understood the charges being disclosed, or that she would have sought and obtained a lower price. While Deutsche is correct that Lippner has not shown that the disclosure statement violation was the proximate cause of her actual damages, Deutsche has neglected the fact that it is liable for failure to rescind. The Section 1640 damages provision under TILA specifically includes damages for a violation of the TILA rescission provisions. 15 U.S.C. §

1640(a)(1). This court found on summary judgment that Deutsche violated TILA by failing to honor Lippner's rescission demand. Therefore, pursuant to Section 1640, Deutsche is liable for any actual damages that were proximately caused by Deutsche's failure to honor the rescission demand.

Lippner argues that if it were not for Deutsche's failure to honor the rescission demand in violation of TILA and subsequent choice to bring a state foreclosure action, Lippner would never have suffered the expenses of defending against such an action. Lippner includes an affidavit from her attorney, Lloyd Brooks ("Brooks Affidavit"), which indicates that all of the legal fees in the State Case were incurred subsequent to the date that Lippner elected to cancel the Note and rescind the Loan and the date that Deutsche failed to comply with TILA. We agree with Lippner that Deutsche's TILA violation was a proximate cause of Lippner's state court fees and expenses because Deutsche could have reasonably anticipated that Lippner would incur such fees as a result of Deutsche's illegal actions. *See Lorillard Tobacco v. A & E Oil, Inc.*, 503 F.3d 588, 594 (7th Cir. 2007)(stating that "[f]oresee-ability is the cornerstone of proximate cause, and in tort law, a defendant will be held liable only for those injuries that might have been reasonably anticipated as a natural consequence of the defendant's actions"). We also find that Lippner's State Case fees are not explicitly barred from consideration as actual damages and are recoverable as actual damages.

B. Reasonableness of State Case Attorney's Fees Damages

Deutsche also argues that even if the court should award state case attorney's fees to Lippner, the court should find that the fees requested are not appropriately supported and are unreasonable. Deutsche points to the fact that federal courts require a fee petition documenting reasonable expenditures for prevailing plaintiffs who wish to obtain attorney's fees by statute. Deutsche argues that Lippner's request for damages is only supported by an affidavit and that the fees requested are not reasonable. Lippner argues that the expenses she incurred in defending against the state foreclosure action are actual damages she sustained that were proximately caused by Deutsche's actions in violation of TILA. We find that the attorney's fees Lippner incurred as a result of Deutsche's actions in violation of TILA are recoverable as actual damages and that these fees were reasonably foreseeable to Deutsche. To determine a reasonable amount, the court can consider a lodestar method, which is calculated by "multiplying the number of hours the attorney reasonably expended on the litigation times a reasonable hourly rate." *Mathur v. Board of Trustees of Southern Illinois University*, 317 F.3d 738, 742 (7th Cir. 2003). The Brooks Affidavit represents that Lippner's attorney spent 16.3 hours in connection with the State Case, and that his hourly rate for such work is $275.00. We find, based on the Brooks Affidavit, that the requested amount is reasonable. We, therefore, find that Lippner is entitled to actual damages in the amount of $4,482.50 for the State Case attorney's fees and, as requested by Lippner, this

amount should be credited towards Lippner's outstanding balance on her Loan after rescission.

III. Statutory Damages

Lippner argues that she is entitled to statutory damages in the amount $4,000. Section 1640 provides statutory damages for TILA violations in an amount "not less than $200 or greater than $2,000." 15 U.S.C. § 1640(a)(2)(A). Lippner argues that she is entitled to the statutory maximum for the Disclosure Statement violation and the statutory maximum for Deutsche's failure to rescind the Loan. Deutsche concedes that Lippner is entitled to the statutory maximum amount of $2,000 with respect to the TILA violation for failure to rescind. However, Deutsche argues that Lippner should not be able to recover statutory damages for the underlying Disclosure Statement violation due to the fact that Lippner did not pray for such damages in her complaint and the fact that such damages are barred by the statute of limitations.

In Lippner's complaint, she alleged that the Disclosure Statement she received at the closing of the Loan failed to comply with the provisions in Regulation Z and TILA. Lippner alleged that this violation with respect to the Disclosure Statement occurred on or about June 25, 2004, and that the remedy for such a violation, pursuant to TILA, was that Lippner's right to rescind the Loan was extended for a period of two years. Lippner also alleged that the right to rescind the Loan applied to

16

Deutsche as an assignee, and that Deutsche violated TILA by failing to honor Lippner's timely rescission demand. Lippner alleged that the TILA violation with respect to rescission entitled Lippner to statutory damages for that violation. Lippner did not allege in her complaint that she was entitled to statutory damages for the underlying Disclosure Statement violation. In granting summary judgment, the court agreed with Lippner that the Disclosure Statement did violate TILA and Regulation Z and that, pursuant to TILA, the right to rescind the Loan was extended by two years as a consequence. We further agreed with Lippner that Deutsche violated TILA by failing to honor the rescission demand and we found that Lippner was entitled to rescission of the Loan and statutory damages for the rescission violation. Lippner now, for the first time, argues that she is entitled to recover statutory damages for both the rescission violation and the initial disclosure violation. We disagree.

In granting summary judgment, this court ruled that there were violations of TILA with respect to the incomplete Disclosure Statement provided to Lippner at the time of the closing on the loan and with respect to the failure on the part of Deutsche to rescind the Loan. Lippner acknowledges in her complaint that the Disclosure Statement violation occurred on or about June 25, 2004, well beyond the one-year statute of limitations applicable to TILA violations. 15 U.S.C. § 1640(e). Lippner has not advanced an equitable tolling argument and nothing in the record indicates that the equitable tolling doctrines would apply, which would allow Lippner to

pursue such a claim independently. We ruled on the issue of liability with respect to the Disclosure Statement to determine whether Lippner was entitled to an extension of the period to rescind her Loan due to the admitted failure of the original holder of the loan to properly provide a correct payment schedule to Lippner at the time of closing. 12 C.F.R. 226(a)(3). Thus, we considered Lippner's claim with respect to the Disclosure Statement and determined that she was entitled to such a remedy. However, our finding of liability with respect to the underlying Disclosure Statement violation does not entitle Lippner to a separate statutory damages award. Lippner did not bring her claim with respect to the Disclosure Statement as an independent claim but rather as the necessary precursor for her TILA claim with respect to the failure to rescind the Loan. Therefore, she should not be able to recover a second statutory award for that claim.

Lippner also argues that Deutsche waived its statute of limitations defense with respect to the Disclosure Statement violation. However, as Deutsche points out, Deutsche brought the statute of limitations argument with respect to the disclosure violation as an affirmative defense and Lippner never requested damages for the disclosure violation in her initial complaint due to the fact that those damages are clearly time-barred. Therefore, we find that Lippner is entitled to statutory damages in the amount of $2,000 for Deutsche's failure to rescind.

Thus, the court finds that the total damages owed by Deutsche after considering actual and statutory damages are $6,482.50. This amount includes (1)

$4,482.50 in actual damages, and (2) $2,000.00 in statutory damages. Such amount should be credited towards the remaining balance on the Loan after rescission, as requested by Lippner.

IV. Credit Information Removal

     Lippner argues that, in order to return her to *status quo ante*, Deutsche should be required to ensure that the loan service provider take all necessary steps to reverse any adverse information reported to any credit agencies. Although Lippner has not provided the court with any statutory provisions or precedent with this request, since adverse credit information may have been provided by Deutsche to credit reporting agencies, Deutsche should provide a copy of this order, within ten days of the entry of judgment, to any credit reporting agencies, to which Deutsche previously provided information about Lippner.

**CONCLUSION**

Based on the foregoing analysis, we find that Lippner is entitled to rescission of the Loan to be executed in accordance with TILA. The total balance currently remaining on the Loan is $136,381.01. We award Lippner actual damages in the amount of $4,482.50 and statutory damages in the amount of $2,000. The total tender amount owed on the Loan after rescission is $129,898.51. Deutsche is also required to provide a copy of this order, within ten days of the entry of judgment, to any credit reporting agencies to which Deutsche previously provided information about Lippner. We also dismiss John Doe from the instant action.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: September 9, 2008